Steven M. Kaplan (SK-6909)
KAPLAN & LEVENSON P.C.
*Attorneys for Plaintiff*
630 Third Avenue
New York, NY 10017
212.983.6900

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

THE ROBERT ALLEN GROUP, INC.,



Case No.    '08 CIV 5378

      Plaintiff,

    -against-

MONIKER ONLINE SERVICES, INC.,
MONIKER PRIVACY SERVICES,
NAMEKING.COM, INC.,
OVERSEE.NET, INC.,
OS DOMAIN HOLDINGS VI, LLC,
DOMAIN PRIVACY SERVICE, and
DOES 1-10,

      Defendants.

**COMPLAINT**

(Jury Trial Requested)

---------------------------------------------------------

Plaintiff The Robert Allen Group, Inc. ("Robert Allen") alleges as follows:

**SUBJECT MATTER JURISDICTION AND VENUE**

1.    This is an action for cybersquatting under 15 U.S.C. § 1125(d), trademark infringement and counterfeiting under 15 U.S.C. § 1114(1), false designation of origin under 15 U.S.C. § 1125(a), trademark dilution under 15 U.S.C. § 1125(c), contributory trademark infringement and false designation of origin under 15 U.S.C. §§ 1114 and 1125(c), unfair competition under New York common law, violation of New York General Business Law §349 and trademark dilution under New York General Business Law §360-1.

2.    This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

3.      This Court has supplemental jurisdiction over the claims arising under New York law pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim, and a significant effect of the damages caused by defendants' conduct, occurred in this District.

## PARTIES AND PERSONAL JURISDICTION

5.      Robert Allen is a Delaware corporation with executive, design and administrative offices located at 11 West 42nd Street, New York, New York.

6.      Upon information and belief, defendant MONIKER ONLINE SERVICES, INC. ("Moniker") is a Florida limited liability company with its principal office located at 20 Southwest 27th Avenue, Pompano Beach, Florida.

7.      Upon information and belief, defendant MONIKER PRIVACY SERVICES ("Moniker Privacy") is a business entity of unknown status with its principal office located at 20 Southwest 27th Avenue, Pompano Beach, Florida.

8.      Upon information and belief, defendant NAMEKING.COM, INC. ("Nameking") is a California corporation with its principal office at 515 South Flower Street, Los Angeles, California.

9.      Upon information and belief, defendant OVERSEE.NET, INC. ("Oversee") is a California corporation with its principal office located at 515 South Flower Street, Los Angeles, California.

10.    Upon information and belief, defendant OS DOMAIN HOLDINGS VI, LLC, ("OSD") is a Delaware corporation with its principal office located at 515 South Flower Street, Los Angeles, California.

11.    Upon information and belief, DOMAIN PRIVACY SERVICE ("Domain Privacy") is a business of unknown status with a principal place of business located at 4300 South US Highway 1 203-168, Jupiter, Florida.

12.    Upon information and belief, Moniker is a domain name registrar accredited by Internet Corporation for Assigned Names and Numbers ("ICAAN") to assign to its customers Internet domain names ending in the suffix (or "top level domain") *.com*, which can be used by its customers for e-mail addresses and/or to operate websites on the Internet.

13.    Upon information and belief, Moniker issued the registrations for the domain names *robertallenfabrics.com* and *robertallengroup.com* and has the ability to restrict its customers' unlawful use of those domain names and the unlawful use of Robert Allen's trademarks posted on the websites operated at those domain names.

14.    Upon information and belief, Nameking is a domain name registrar accredited by ICAAN to assign to its customers Internet domain names ending in the suffix *.com*, which can be used by its customers for e-mail addresses and/or to operate websites on the Internet.

15.    Upon information and belief, Nameking issued the registrations for the domain names *therobertallengroup.com* and *robertallenddesign.com* and has the ability to restrict its customers' unlawful use of those domain names and the unlawful use of Robert Allen's trademarks posted on the websites operated at those domain names.

16.    *Robertallenfabrics.com*, *robertallengroup.com*, *therobertallengroup.com*, and *robertallenddesign.com* are collectively referred to herein as the "Infringing Domain Names."

17.    Upon information and belief, Does 1-10 (the "Doe Defendants") are customers of defendants Moniker, Nameking, OSD, Moniker Privacy, Domain Privacy and/or Oversee and are the purported beneficial owners of the Infringing Domain Names and/or the beneficiaries of the businesses being conducted from the websites operating under the Infringing Domain Names.

18.    OSD is listed in the WHOIS database as the registrant of *therobertallengroup*.com.

19.    Upon information and belief, Moniker, Moniker Privacy, Nameking, Oversee, OSD and Domain Privacy are all affiliated with and/or have a contractual relationship with each other and all act in concert with each other in connection with the conduct complained of herein.

20.    Robert Allen is not presently aware of the true names of the defendants named herein as Does 1-10, inclusive, and therefore brings this action against these defendants by such fictitious names.  Robert Allen will amend this Complaint to allege these defendants' true names and capacities when ascertained.

## FACTS COMMON TO ALL CLAIMS

### Background of Robert Allen's Business

21.    Robert Allen is the foremost designer and seller of fine fabrics, textiles and upholstery for use in the home furnishings business.  Robert Allen pioneered the technique of assembling fabric "swatches" into an attractive book for distribution among its client and prospective client bases.  This technique is now the standard of the industry and defines how fine fabrics are marketed and sold.  Building on the business model it pioneered, Robert Allen receives orders via the Internet, through its showrooms, e-mail, telephone and facsimile, and ships product directly to customers (or per the customers' instructions).  Robert Allen also sells an extensive selection of furniture, bedding and other home furnishings.

22.    During the 1950's, Robert Allen created, adopted and commenced use of the trade name and trademark ROBERT ALLEN and variants thereof to indentify and distinguish its products. Over time, the variants included, *inter alia,* the famous ROBERT ALLEN mark and logo which identify and distinguish Robert Allen's products. Attached hereto as Exhibit A is a list of Robert Allen's current United States trademark registrations, which are hereinafter referred to as the "Robert Allen Marks."

23.    Robert Allen spends tens of millions of dollars every year promoting and advertising its website and products under the Robert Allen Marks.

24.    Robert Allen has extensively used the Robert Allen Marks in the United States in interstate commerce in connection with advertising and promoting its products on its websites at www.robertallendesign.com and www.beaconhilldesign.com, in constructing and distributing hundreds of thousands of fabric sample books each year, through its international showroom network, in national and international trade and consumer magazines, through direct mail, and at trade shows around the world.

25.    The Robert Allen Marks have been extensively and continually advertised and promoted within the United States for more than fifty years and worldwide for the past fifteen years. Substantial amounts of time, effort and money have been expended in ensuring that the purchasing consumers associate the Robert Allen Marks exclusively with Robert Allen.

26.    As a result of its time, effort and money invested in its business, Robert Allen has achieved a reputation for excellence and creativity in the design, presentation and sale of its products. As a result of its reputation for excellence, Robert Allen enjoys substantial demand for, and sales of, its products. Together with its reputation for excellence, Robert Allen enjoys tremendous goodwill in the Robert Allen Marks.

27.    Upon information and belief, for the past fifty years, Robert Allen has been amongst the largest competitors in the relevant market place and is widely recognized in the United States and around the world as a market leader.

28.    By virtue of the scope of sales made and the substantial sums spent to advertise and promote products under the Robert Allen Marks, such marks have acquired secondary meaning in the minds of the purchasing public and the home furnishings community, and are highly distinctive, famous and serve to uniquely identify Robert Allen's products.  As a result, the Robert Allen Marks are a property right of Robert Allen with incalculable value.

29.    The Robert Allen Marks are valid and enforceable United States trademarks.

30.    Robert Allen is and has been a pioneer and leader in the relevant industry in using the Internet to market and sell its products.

31.    Since at least as early as 2001, Robert Allen has operated a website at *www.robertallendesign.com.*  The website is an important resource used constantly by the home furnishings consumer base and is visited approximately one million times per year.

32.    Robert Allen has supported its marketing efforts through related websites and domain names, including:  *robertallendesign.com, beaconhilldesign.com, beaconhillshowrooms.com, robertallenmail.com, robertallenaccess.co.uk, robertallen.net, designrobertallen.com, ametex.com, robertallenathome.com, robertallenhome.com, beaconhillfabric.com, robertallenfabricstore.com, fabriccloseoutfabric.com, closeoutfabricoutlet.com, thefurnitureoutlet.com, closeoutfabricstore.com, fabricmilldirect.com, and fabriccloseoutstore.com.*

33.    Robert Allen's Internet presence, and the ability for consumers to conduct business with it on the Internet, is extremely important to Robert Allen's business.

34.     Approximately eight percent of Robert Allen's sales are made via Internet orders and a much larger percentage of its sales involve customers' use of the Robert Allen website as part of the purchase process.

35.     Robert Allen has not authorized any of the defendants to use the Robert Allen Marks or the Infringing Domain Names.

**Defendants' Cybersquatting, Infringing and Other Unlawful Activities**

36.     Defendants, acting in concert with one another, operate a business or businesses which, among other things, rely on cybersquatting and trademark infringement to maximize (or as Moniker calls it, "monetize") the amount of traffic on their clients' websites. Essentially, the defendants register multiple domain names using third parties' well established trademarks, including derivatives thereof, confusingly similar marks and known misspellings thereof (known as "typo-squatting"), to misleadingly divert Internet traffic to their clients' websites which often offer competing or closely related products, or seek to profit from the legitimate trademark owners' marks by diverting unsuspecting customers to "parked" websites from which defendants' and/or their customers (in this case, the Doe Defendants) receive multiple forms of revenue, including without limitation "pay per click" or "PPC" revenue, advertising revenue and revenue sharing with retailers that have hyperlinks on the "parked" websites.

37.     For example, a customer looking to purchase genuine Robert Allen fabrics from Robert Allen may type "Robert Allen" into a search engine or directly into their web browser as a domain name. Because defendants have registered the Infringing Domain Names (and likely many other infringing domain names), the customer will be directed to websites that are not affiliated with Robert Allen, but rather to websites owned by some combination of the defendants, which receive, among other things, (a) PPC and "pop up" advertising revenue, and

(b) revenue sharing from the fabric sellers which have hyperlinks on the websites at the

Infringing Domain Names from which the customer ultimately purchases product -- all based

upon the unsuspecting customer's recognition and use of the Robert Allen trademark. This is the

plain definition of cybersquatting.

    38.    Moniker confirms the nature of its business and advertises its "Domain Traffic

Monetization" services as follows:

### Make Money with Domain Names through Traffic Monetization

Domain traffic monetization is one of easiest and best ways to make money with your domain names. This service enables unused or under utilized domains and directs natural type in visitors to linguistically mapped and customized landing pages to drive revenue through pay per click (PPC) and ad networks. These PPC networks then compensate domainers with payouts for that traffic that is directed to these pages.

<u>Sign up for traffic monetization</u> with DomainSponsor.com. Our strategic partner www.DomainSponsor.com will set you up with the traffic optimization tools you need to make the most of your domain traffic. If you have any questions about traffic monetization, please contact Moniker toll free at 1-800-841-7686.

### Top 5 Reasons to Use DomainSponsor

**#1 Maximize Profits** – DomainSponsor automatically analyzes and selects the best ad network for EACH of your domains on a domain by domain basis to maximize total profits. Your revenue share percentage will be higher than with any other service.

**#2 Superior Reporting** – DomainSponsor gives you summary and detailed reporting on domain traffic and revenue.

**#3 Landing Page Optimization** – DomainSponsor allows you to choose your landing pages and the PPC partner giving you flexibility.

**#4 Save Time** – DomainSponsor knows that time is money, and their traffic optimization tool lets you setup your account in minutes and start earning money immediately!

**#5 Simplicity** – DomainSponsor lets you access several ad networks all from one, easy-to-use traffic optimization tool. No more juggling multiple ad networks.

### What Makes DomainSponsor Different Than Other Traffic Monetization Services?

Most traffic monetization services only monetize parked domains with their affiliated PPC ad network. So you have to take the word of the provider that their service is going to make you the most money with your domain names. In order to truly know whether or not it was the best traffic monetization service, you would have to test your domain names in several PPC ad networks. This process of monetizing parked domains can be costly and time consuming.

DomainSponsor takes care of all the testing for you. Their traffic optimization tools test your parked domains on several PPC ad networks. When it finds the ad network that makes you the most money with your domain names, DomainSponsor funnels your traffic to that PPC network, getting you the best return on investment (ROI) on your domain traffic. <u>Sign up for traffic monetization</u> with DomainSponsor today!

39.     Similarly, Oversee advertises its "domain monetization" services as follows:

DomainSponsor is the leader in domain monetization, a service that enables domain owners to maximize earnings on the traffic generated to their domains. This traffic is generated by direct navigation — when users search through the address bar, finding relevant results at a given domain without a search engine.
DomainSponsor features the highest traffic conversions in the industry, and uses proprietary optimization technology to produce the most relevant and profitable results, in the form of custom landing pages for each domain.

## Back to Basics
**What's domain parking all about? Advertising!**
Domain landing pages serve as a medium to draw attention to goods and services. Publishers work with domain monetization services (like us) to monetize the type-in (or direct navigation) traffic visiting undeveloped domain names. When a visitor reaches a given domain, it redirects to a landing page featuring text advertisements relevant to the visitor, benefiting publisher, advertiser and consumer.

40.     Upon information and belief, defendants' illicit services generate revenues and profits not just for the Doe Defendants, but for themselves too.  Upon information and belief, defendants keep as much as twenty percent of the PPC revenue.  Therefore, defendants profit each time a consumer is diverted by one of the Infringing Domain Names to a non-Robert Allen website and clicks on a link to one of Robert Allen's competitors, a non-affiliated reseller of Robert Allen fabrics, or other goods and services sold from the "parked" or "landing" site.

41.     Upon information and belief, defendants also profit from the use of the Infringing Domain Names by selling "privacy services" to conceal the registrant information.  On information and belief, defendants use the privacy services of Moniker Privacy, Domain Privacy and others as part of their scheme to conceal the true identity of the domain name owner (in violation of ICAAN rules) and increase the burden on trademark holders such as Robert Allen which seek to enforce their rights.

42.     These privacy services are employed by defendants in this action.  For example, the registrants of the Infringing Domain Names are listed on the WHOIS database as follows:

| **INFRINGING DOMAIN NAME** | **REGISTERED OWNER** | **REGISTRAR** |
|---|---|---|
| www.robertallenfabrics.com | Domain Privacy Service | Moniker |
| www.therobertallengroup.com | Defendant OSD | Nameking |
| www.robertallenddesign.com | Defendant OSD | Nameking |
| www.robertallengroup.com | Moniker Privacy Services | Moniker |

43.    ICAAN rules require disclosure of the true registrants' names, addresses and e-mail contact information upon request.  Robert Allen requested such information, but defendants ignored such requests and did not provide same.

**Harm to Robert Allen and the General Public**

44.    Defendants' unauthorized registration and use of the Infringing Domain Names is and was likely to cause confusion, mistake and deception as to the source or origin of the Infringing Domain Names and the products and services sold thereunder, and is and was likely to falsely suggest a sponsorship, connection, license or affiliation between defendants and the Infringing Domain Names on the one hand, and Robert Allen on the other.

45.    Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public, which has an inherent interest in being free from confusion, mistake and deception.

46.    Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Robert Allen and the Robert Allen Marks.

## FIRST CAUSE OF ACTION
### (Cybersquatting under 15 U.S.C. § 1125(d))

47.     Robert Allen realleges and incorporates the allegations contained in paragraphs 1 through 46 as if fully set forth herein.

48.     Defendants have registered, trafficked in, and/or used the Infringing Domain Names, which are confusingly similar to and/or dilutive of the Robert Allen Marks.  They have also shielded the identities of the Doe Defendants.

49.     The Robert Allen Marks are, and were at the time defendants registered, trafficked in and or used the Infringing Domain Names, distinctive and/or famous.

50.     Upon information and belief, defendants have committed, and continue to commit, the acts described above with bad faith intent to profit from the Robert Allen Marks.

## SECOND CAUSE OF ACTION
### (Federal Trademark Infringement and Counterfeiting under 15 U.S.C. § 1114(1))

51.     Robert Allen realleges and incorporates the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

52.     Defendants have used and/or are using in commerce the Infringing Domain Names, each of which is identical to or confusingly similar with Robert Allen's distinctive and famous Robert Allen Marks in connection with the sale, offering for sale and/or distribution of goods or services.

53.     Defendants' use in commerce of the Infringing Domain Names is intentional and is likely to cause confusion, mistake, and/or to deceive customers regarding the source or affiliation of the Infringing Domain Names and websites associated therewith.

54.     Upon information and belief, defendants committed the infringing acts willfully, with knowledge that the Infringing Domain Names are counterfeits of the Robert Allen Marks

and with disregard for Robert Allen's rights and with the intent to cause confusion, mistake and/or to deceive.

55.    Defendants' conduct infringes Robert Allen's federally registered rights in the Robert Allen Marks in violation of 15 U.S.C. § 1114.

56.    Defendants' conduct constitutes counterfeiting in violation of 15 U.S.C. § 1114(1), entitling Robert Allen to relief under, *inter alia*, 15 U.S.C. §§ 1114, 1116 and 1117.

57.    Defendants' conduct has caused and, unless enjoined, will continue to cause Robert Allen to suffer irreparable and continuous loss, damage and injury to its goodwill and business reputation.

58.    Monetary damages will not provide full and adequate relief for all of Robert Allen's injuries from defendants' unlawful conduct and Robert Allen is therefore entitled to an injunction pursuant to 15 U.S.C. § 1116.

59.    Defendants' acts of trademark infringement and counterfeiting are willful and entitle Robert Allen to recover damages sustained as a result of defendants' unlawful conduct, including three times defendants' profits in addition to Robert Allen's damages, costs of suit and attorney's fees pursuant to 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION
**(False Designation of Origin under 15 U.S.C. § 1125(a))**

60.    Robert Allen realleges and incorporates the allegations contained in paragraphs 1 through 59 as if fully set forth herein.

61.    Defendants' use in commerce of the Infringing Domain Names, each of which is identical or confusingly similar to the Robert Allen Marks, constitutes a false designation of origin and/or false or misleading description or representation of fact, which is likely to cause

confusion, mistake and/or deception as to the affiliation, connection, or association with Robert Allen, or as to the origin, sponsorship or approval of defendants' services and products.

62.    Defendants' conduct constitutes trademark infringement, unfair competition, false designation of origin and false representation in violation of 15 U.S.C. § 1125(a).

63.    Defendants' conduct has caused and, unless enjoined, will continue to cause Robert Allen to suffer irreparable and continuous loss, damage and injury to its goodwill and business reputation.

64.    Monetary damages will not provide full and adequate relief for all of Robert Allen's injuries from defendants' unlawful conduct and Robert Allen is therefore entitled to an injunction pursuant to 15 U.S.C. § 1116.

65.    Defendants' acts of unfair competition are willful and entitle Robert Allen to recover damages sustained as a result of defendants' unlawful conduct, including three times defendants' profits in addition to Robert Allen's damages, costs of suit and attorney's fees pursuant to 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION
### (Federal Trademark Dilution under 15 U.S.C. § 1125(c))

66.    Robert Allen realleges and incorporates the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

67.    The Robert Allen Marks are distinctive and famous.

68.    Defendants have used or are using as part of the Infringing Domain Names, and/or are facilitating the use of, marks that are the same and/or nearly identical to the Robert Allen Marks in connection with their services and products. This use began after the Robert Allen Marks became famous.

69.    Defendants' use and/or facilitation of the use of the Robert Allen Marks and confusingly similar marks has and will cause dilution of the distinctive quality of the Robert Allen Marks and will otherwise cause irreparable injury to Robert Allen's business, reputation and goodwill.

70.    Upon information and belief, defendants' use of the Robert Allen Marks and/or facilitation of the use thereof and confusingly similar marks is willful in nature, in that defendants willfully intended to trade on the reputation of Robert Allen and/or to cause dilution to the Robert Allen Marks.

71.    Defendants' conduct constitutes federal trademark dilution pursuant to 15 U.S.C. §1125(c).

72.    Defendants' conduct has caused, and unless enjoined, will continue to cause Robert Allen to suffer irreparable and continuous loss, damage and injury to its goodwill and business reputation.

73.    Monetary damages will not provide full and adequate relief for all of Robert Allen's injuries from defendants' unlawful conduct and Robert Allen is therefore entitled to an injunction pursuant to 15 U.S.C. § 1116.

74.    Defendants' acts of unfair competition are willful and entitle Robert Allen to recover damages sustained as a result of defendants' unlawful conduct, including three times defendants' profits in addition to Robert Allen's damages, costs of suit and attorney's fees pursuant to 15 U.S.C. § 1117.

### FIFTH CAUSE OF ACTION
**(Contributory Trademark Infringement under 15 U.S.C. § 1114 and 1125)**

75.    Robert Allen realleges and incorporates the allegations contained in paragraphs 1 through 74 as if fully set forth herein.

76.    To the extent any defendant is not found to be a primary infringer, those defendants, through their actions in concert, affiliation with, support and inducement of the primary infringers' acts are liable for contributory infringement of the Robert Allen Marks under 15 U.S.C. § 1114 and 1125 and are thus jointly and severally liable therefore.

77.    Upon information and belief, said contributory infringing defendants knew that the Infringing Domain Names infringed upon the Robert Allen Marks and constituted wrongful conduct as alleged in this complaint, and intentionally and/or knowingly induced and/or continue to induce and facilitate the infringement of plaintiff's Robert Allen Marks based upon the conduct alleged in this complaint.

78.    Said contributory infringing defendants directly benefit from the use of the plaintiff's Robert Allen Marks and/or confusingly similar marks contained in the Infringing Domain Names because such use results in multiple forms of revenue sharing by the contributory infringing defendants, all as more fully set forth above in this complaint.

79.    Moniker Privacy and Privacy Services also facilitate the wrongful conduct alleged herein and benefit from the revenue collected by use of their "privacy services."

### SIXTH CAUSE OF ACTION
### (Unfair Competition under New York Common Law)

80.    Robert Allen realleges and incorporates the allegations contained in paragraphs 1 through 79 as if fully set forth herein.

81.    Defendants' use of the Robert Allen Marks and/or confusingly similar marks in the Infringing Domain Names was intended to confuse and mislead the public that the products and services being sold by the websites associated with the Infringing Domain Names were authorized, sponsored, endorsed, sanctioned by, or affiliated with, Robert Allen, in violation of Robert Allen's rights in the Robert Allen Marks under New York common law.

- 15 -

82.    Upon information and belief, defendants chose to use the Robert Allen Marks and confusingly similar marks with constructive and actual knowledge of Robert Allen's prior use of and rights in the Robert Allen Marks.  By using the valuable and distinctive Robert Allen Marks and confusingly similar marks, defendants have been unjustly enriched and damaged Robert Allen.

83.    The aforesaid conduct is causing Robert Allen irreparable harm for which there is no fully adequate remedy at law, and unless restrained, will continue to cause irreparable harm.

### SEVENTH CAUSE OF ACTION
**(Violation of NY General Business Law § 349)**

84.    Robert Allen realleges and incorporates the allegations contained in paragraphs 1 through 83 as if fully set forth herein.

85.    Defendants' use and/or facilitation of the use of the Robert Allen Marks and confusingly similar marks has the capacity to deceive and is deceiving the public as to the source or sponsorship of defendants' goods and services.  As a result, the public will be damaged.

86.    Defendants' conduct is willful and in knowing disregard of Robert Allen's rights.

87.    Defendants have been and are in engaged in deceptive acts or practices in the conduct of a business, trade or commerce in violation of Section 349 of the New York General Business Law.

88.    The aforesaid conduct is causing Robert Allen irreparable harm for which there is no fully adequate remedy at law, and unless restrained, will continue to cause irreparable harm.

### EIGHTH CAUSE OF ACTION
**(Trademark Dilution under New York General Business Law § 360-1)**

89.    Robert Allen realleges and incorporates the allegations contained in paragraphs 1 through 88 as if fully set forth herein.

90.    As a result of the extensive use and promotion of the Robert Allen Marks by Robert Allen for many years, the Robert Allen Marks are famous and extraordinarily well known throughout this State and throughout the United States, are highly distinctive of Robert Allen's products and services and are uniquely and exclusively associated with Robert Allen.  The Robert Allen Marks became famous long before defendants commenced their unauthorized use and/or facilitation of the use of the Robert Allen Marks and confusingly similar marks.

91.    Defendants' unauthorized use and/or facilitation of the use of the Robert Allen Marks is diluting and is likely to continue diluting such marks by blurring the distinctiveness thereof and by tarnishment, and is likely to injure Robert Allen's business reputation in that it has removed Robert Allen's reputation from its own control and that deficiencies in or complaints about defendants' good and/or services will redound to the harm of Robert Allen, all in violation of Section 360-1 of the General Business law of the State of New York.

92.    The aforesaid conduct is causing Robert Allen money damages and other forms of irreparable harm for which there is no adequate remedy at law, and unless restrained, will continue to cause irreparable harm.

WHEREFORE, Robert Allen requests that the Court enter final judgment:

a.    Permanently enjoining and restraining all defendants, their agents, representatives, licensees, successors, parents, affiliates, divisions, subsidiaries, employees, assigns and suppliers, and all persons acting in concert, participation or privity with any of them from:  (i) registering, trafficking in, and using, in any manner, the Infringing Domain Names, or any other domain names that are counterfeits of, confusingly similar to, or likely to dilute the Robert Allen Marks or any other marks owned by Robert Allen; (ii) transferring, releasing, deleting,

and assigning the Infringing Domain Names or any other domain names that are counterfeits of, confusing similar with, or likely to dilute the Robert Allen marks or any other marks owned by Robert Allen; (iii) using any of the Robert Allen Marks, or any other name, mark, designation or depiction in a manner that is likely to cause confusion whether defendants are affiliated or associated with or sponsored by Robert Allen, or that is likely to dilute the distinctiveness of the Robert Allen marks or any other marks owned by Robert Allen; (iv) registering any domain name without providing complete and accurate contact information, including defendants' full legal names as the registrants, and not maintaining complete and accurate contact information, including defendants' full legal name as the registrant; (v) selling, offering for sale or displaying goods, or offering services under or bearing or incorporating the Robert Allen Marks or the Infringing Domain Names or any other designation which is likely to cause confusion with the Robert Allen Marks; (vi) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to subparagraphs (i) through (v) above;

b.  Directing that all defendants deliver up to Robert Allen all products, packaging, labels, stickers, signs, stationary, brochures, computer hard drives, disks and other storage devices, and other materials incorporating or bearing any of the Infringing Domain Names or the Robert Allen Marks;

c.  Directing that all defendants transfer to Robert Allen all of the Infringing Domain Names and any other domain name which they own or control, directly or indirectly, or that was registered at their direction, request or instruction, that is

identical, confusingly similar to, and/or likely to dilute the distinctiveness of the
Robert Allen Marks;

d.     Ordering defendants, jointly and severally, to account to Robert Allen for, and
disgorge, all profits they have derived by reason of the unlawful acts complained
of above;

e.     Ordering defendants, jointly and severally, to pay damages to Robert Allen, and
that those damages be trebled under 15 U.S.C. § 1117;

f.     Ordering defendants, jointly and severally, to pay statutory damages under 15
U.S.C. § 1117(c), on election by Robert Allen, in an amount up to $100,000 for
each counterfeit domain name per type of goods or services sold, offered for sale,
or distributed, and that amount be increased by up to $1,000,000 for each
counterfeit domain name per type of goods or services sold, offered for sale, or
distributed due to the willful nature of defendants' counterfeiting;

g.     Ordering defendants, jointly and severally, to pay statutory damages under 15
U.S.C. § 1117(d) upon election by Robert Allen, in an amount of up to $100,000
for each domain name found to constitute cybersquatting;

h.     Ordering defendants, jointly and severally, to pay Robert Allen's reasonable
attorneys' fees, prejudgment interest and costs of this action under 15 U.S.C. §
1117;

i.     Ordering defendants to file with the Court, and serve upon Robert Allen, a written
report under oath setting forth in detail the manner and form in which defendants
have complied with the injunction and judgment within 30 days after service of
the injunction and judgment upon them;

j.       Ordering defendants, jointly and severally, to pay punitive damages in an amount

to be determined at trial based upon the foregoing acts of defendants; and

k.       Granting Robert Allen such other and further relief that the Court deems just and

proper.

Dated:  New York, NY
         June 12, 2008

                              KAPLAN & LEVENSON P.C.
                              *Attorneys for Plaintiff*
                              630 Third Avenue
                              New York, NY 10017
                              212.983.6900

                       By: s/Steven M. Kaplan/
                              Steven M. Kaplan (SK-6909)

- 20 -

## EXHIBIT A

|    | Serial Number | Reg. Number | Word Mark |
|----|---------------|-------------|-----------|
| 1  | 78148037      | 2855052     | A BEAUTIFUL EXPERIENCE |
| 2  | 76315715      | 2835000     | COLORLOGIC |
| 3  | 76198940      | 2787918     | ROBERT ALLEN @ HOME |
| 4  | 76185992      | 2768627     | ROBERT ALLEN @HOME |
| 5  | 76125567      | 2832361     | COLORLOGIC |
| 6  | 75981863      | 2621910     | ROBERT ALLEN |
| 7  | 75871815      | 2948234     | ROBERT ALLEN |
| 8  | 75376253      | 2212828     | AMETEX |
| 9  | 75471103      | 2478809     | Logo |
| 10 | 75471102      | 2282921     | ROBERT ALLEN |
| 11 | 75471101      | 2478808     | Logo |
| 12 | 75426631      | 2294027     | COLOR LIBRARY |
| 13 | 75310499      | 2611048     | Logo |
| 14 | 74255389      | 1883145     | BEACON HILL |